IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MICHELLE H. JENEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. CIV-14-1423-F |
| | ) | |
| OKLAHOMA HEART HOSPITAL | ) | |
| RESEARCH FOUNDATION (formerly | ) | |
| known as Oklahoma Foundation for | ) | |
| Cardiovascular Research); and | ) | |
| OKLAHOMA HEART HOSPITAL, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

## I. PRELIMINARY STATEMENT

1.     This is a civil action asserting claims for employment discrimination and
retaliation prohibited by the Age Discrimination in Employment Act of 1967, as
amended, 29 U.S.C. §§ 621 *et seq*., ("ADEA"); and the Americans with Disabilities Act
of 1990, as amended, 42 U.S.C. §§ 12101 *et seq*. ("ADA").

## II. PARTIES

2.     Plaintiff, Michelle H. Jeney, is an individual citizen and resident of the
United States who resides in Yukon, Oklahoma, within the Western District. Plaintiff was
employed and discharged from employment by Defendants in Oklahoma City, Oklahoma,
within the Western District of Oklahoma.

3.     Defendant, Oklahoma Heart Hospital Research Foundation ("OHHRF"), is

an entity which has its headquarters and principal place of business in Oklahoma City, Oklahoma, and is located in the facilities of the Oklahoma Heart Hospital. Defendant, Oklahoma Heart Hospital ("OHH"), is a for-profit business entity which has its headquarters and principal place of business in Oklahoma City, Oklahoma.

### III.  JURISDICTION AND VENUE

4.      This Court has federal question jurisdiction under 28 U.S.C. § 1331, 29 U.S.C. § 626(c) and § 216(b), and 42 U.S.C. § 2000e-5(f)(3) and § 12117(a).

5.      Venue is proper under 29 U.S.C. § 216(b), 42 U.S.C. § 2000e-5(f)(3) and § 12117(a), and 28 U.S.C. § 1391(b) and (c).

### IV.  CONDITIONS PRECEDENT

6.      On or about December 11, 2013, Plaintiff timely filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 564-2014-00255, alleging, inter alia, that Defendants discriminated against her based upon her age and disability, and retaliated against her for opposing such discrimination. Based upon Plaintiff's initial charge, an EEOC Charge of Discrimination, EEOC Form 5, was subsequently filed. Plaintiff is filing this Complaint against Defendants within ninety (90) days of her receipt of a Notice of Right to Sue from the EEOC dated September 29, 2014.

7.      Plaintiff has exhausted her administrative remedies as to her federal claims involving age and disability discrimination and retaliation.

## V.  FACTUAL ALLEGATIONS

8.      OHH and OHHRF (or its predecessor, the Oklahoma Foundation for
Cardiovascular Research) have each had over twenty (20) employees in each week of the
last four calendar years. OHH and OHHRF or its predecessor have each been engaged
in activities affecting interstate commerce at all times since January 1, 2011. OHH and
OHHRF have each received medical devices, supplies, and pharmaceuticals from outside
the state of Oklahoma and used or resold them within the state of Oklahoma; have
exchanged data and information with entities outside the state of Oklahoma; and have
entered into contracts with and/or received funding or payments from entities outside the
state of Oklahoma, or otherwise participated in activities affecting interstate commerce.

9.      Each Defendant is a covered employer under the ADEA and the ADA.
Plaintiff is suing both OHH and OHHRF under the legal doctrine that such entities are
joint employers in that both Defendants controlled Plaintiff's job duties and the work
rules, policies and procedures, and terms and conditions of her employment. Alternatively,
OHH and OHHRF constitute an integrated enterprise, and OHH determines the operations,
finances, and labor and personnel policies of OHHRF.

10.       Plaintiff's year of birth is 1966 and she was 47 years old at the time of her
discharge. Plaintiff is disabled, has a record of disability, and/or is perceived as being
disabled by Defendants due to sciatica from an on-the-job injury, depression, anxiety, and
panic attacks.

11.      Defendants' Managers and Human Resources Department, and Plaintiff's

immediate supervisors knew that she was disabled at the time adverse actions described below were taken against her.

12.     In 1999, Plaintiff was initially employed as a Clinical Research Coordinator with the Oklahoma Foundation for Cardiovascular Research. On or about May 1, 2014, the Oklahoma Foundation for Cardiovascular Research changed its name to the Oklahoma Heart Hospital Research Foundation.

13.     From the time of Plaintiff's initial hire in 1999 until her discharge on or about June 28, 2013, her annual written performance evaluations always indicated that she was performing her job duties in a very satisfactory manner. Furthermore, she did not receive any written warnings or other disciplinary action due to alleged performance problems, policy violations, or work rule violations.

14.     At all times material herein, Plaintiff was a Certified Clinical Research Coordinator. Her job duties included, among other things, assisting in organizing and implementing research studies of pharmaceuticals and medical devices, recruitment of patients for the studies, obtaining informed consent from the patients, and monitoring and documenting findings during the studies.

15.     Plaintiff was well qualified to perform her job duties based upon her education and training, and having performed her job duties in a satisfactory manner for approximately 14 years, as evidenced by her favorable performance evaluations and lack of disciplinary actions.

16.     In approximately April 2013, Beverly Hudson became the new Director of

the Oklahoma Foundation for Cardiovascular Research, and Plaintiff's supervisor. Hudson immediately began taking a series of discriminatory actions against Plaintiff, including, without limitation, over-scrutinizing her work performance, unjustifiably criticizing her job performance, imposing different standards of job performance, and imposing a hostile work environment on her. Hudson also stated that she could hire two younger nurses for the amount paid to Plaintiff.

17.    At the initial meeting with Plaintiff, Hudson asked her about her medical conditions and asked her to explain them. Hudson subsequently criticized her for missing work, even though Hudson or other supervisory personnel had previously approved the time off. Plaintiff protested and opposed Hudson's use of pre-approved absences and absences due to her disability as a basis for criticizing her attendance, and the use of different standards for older employees.

18.    On or about April 19, 2013, Hudson met with Plaintiff to discuss a problem with the informed consent form used in a study. Plaintiff objected to its use because it did not inform the patient that neither Defendants nor the sponsor of the study was going to pay for the removal of the implanted device. Hudson also criticized Plaintiff for an alleged error in a FedEx shipment that occurred in calendar year 2012, months before Hudson was even hired, and before Plaintiff was given a raise in March 2013, due to her satisfactory job performance.

19.    On May 15, 2013, Plaintiff was informed by a vendor that she should start looking for a job, and that the vendor had been asked to supply Defendants with a copy

5

of all emails the vendor had received from Plaintiff.

20.     On or about June 28, 2013, Plaintiff was discharged from employment. It was indicated to Plaintiff that her discharge was due to her attendance. The written response to the EEOC stated that problems with Plaintiff's performance, behavior, and disrespectful attitude resulted in her termination.

21.     The reasons given for Plaintiff's termination by Defendants are pretextual and false. Plaintiff denies that there was any deficiency in her work performance or behavior justifying her discharge in comparison to the work performance and behavior of younger, non-disabled employees. Furthermore, during her performance evaluation dated February 10, 2012, out of a total of eight categories, Plaintiff received "Above Average" in six categories and "Average" in two categories. During 2013, Plaintiff was not given a formal evaluation, but on March 15, 2013, she was given a 3% salary increase due to her satisfactory performance. Finally, after her discharge, no misconduct by Plaintiff was found by the Oklahoma Employment Security Commission, and she was awarded unemployment compensation benefits.

22.     After her discharge, Plaintiff job duties were assigned to one or more younger and non-disabled employees. In June and July 2013, Defendants hired three younger employees, ages 29, 33, and 44 respectively.

23.     Defendants have policies stating they will not discriminate against employees because of age and/or disability, or retaliate against them for opposing such discrimination. Nonetheless, Defendants subjected Plaintiff to discriminatory treatment,

including discharge, because of her age and disability, and in retaliation because she opposed discrimination.

24.     All adverse actions described herein, and taken by Defendants against Plaintiff, including without limitation, her discharge, were done intentionally, willfully, and maliciously, or in reckless disregard for the legal rights of Plaintiff.

25.     At the time of Plaintiff's discharge, she was paid at the rate of approximately $65,000 per year, and in addition received fringe benefits. As a result of Defendants' wrongful actions, Plaintiff has suffered a loss of employment; loss of career path and seniority; loss of compensation and benefits; and compensatory damages, including, without limitation, those for humiliation, embarrassment, loss of dignity, stress, and loss of enjoyment of life.

## VI.  FIRST CLAIM:
## VIOLATION OF THE ADEA

26.     Plaintiff incorporates hereunder by reference paragraphs 1-25, as set forth above.

27.     Plaintiff was over age 40 at the time she was subjected to the discriminatory treatment, including discharge.

28.     Plaintiff was fully qualified to perform her assigned job duties and did so in a satisfactory manner.

29.     Younger employees whom Plaintiff had trained were retained after her discharge. Furthermore, three younger employees were hired near the time Plaintiff was

fired. These employees were hired in June and July 2013, and were 29, 33, and 44 years old respectively.

30.     A determining factor in all of Defendants' adverse actions as described above in ¶¶ 16-20, including Plaintiff's discharge, was her age, in violation of the ADEA. As a result of Defendants' adverse actions, Plaintiff suffered the losses and damages described in ¶ 25, above.

31.     Defendants' violations of the ADEA were willful.

32.     Plaintiff is entitled to all remedies and relief afforded by the ADEA, including, without limitation, liquidated damages. Each Defendant is jointly and severally liable to Plaintiff for all losses caused to her by their discriminatory actions.

## VII.  SECOND CLAIM: VIOLATION OF THE ADA

33.     Plaintiff incorporates hereunder by reference paragraphs 1-32, as set forth above.

34.     Plaintiff is protected under the ADA from employment discrimination based upon her disability. Defendants discriminated against Plaintiff by taking all of the adverse actions against her described above in ¶¶ 16-20, including, without limitation, discharging her for pretextual reasons, because of her disability, record of disability, or Defendants' perception that she was disabled, in violation of the ADA. As a result of Defendants' adverse actions, Plaintiff suffered the losses and damages described in ¶ 25, above.

35.     Defendants' actions in violating the ADA were intentional, willful, malicious, or in reckless disregard for Plaintiff's rights thereunder.

36.     Plaintiff is entitled to all remedies and relief provided for a willful violation of the ADA, including back pay, reinstatement or front pay, compensatory damages, punitive damages, costs, expenses, and a reasonable attorney's fee.

## VIII.  <u>JURY TRIAL REQUESTED</u>

37.     Plaintiff is entitled to a jury trial under the ADEA and the ADA, and hereby requests a jury trial.

## IX.  <u>PRAYER FOR RELIEF</u>

38.     Plaintiff prays for judgment as follows:

A.      Payment of back wages, benefits, and compensation;

B.      Reinstatement to her former job position, or alternatively, appropriate future pay, including all wages, benefits and compensation;

C.      Liquidated damages in an amount equal to her back pay award;

D.      Punitive or exemplary damages;

E.      Declaratory and injunctive relief as appropriate;

F.      Pre-judgment and post-judgment interest; and,

G.      Attorney's fees, costs and such other and further relief as the Court deems reasonable and proper.

s/Raymond C. Durbin
OBA No. 2554
601 N.W. 13th Street
Oklahoma City, Oklahoma 73103-2213
Phone:          (405) 521-0577
Fax:             (405) 525-0528
Email:          durbinlaw@flash.net

ATTORNEY FOR PLAINTIFF

**ATTORNEY LIEN CLAIMED.**

**JURY TRIAL DEMANDED.**